PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEMAG CRANES & COMPONENTS CORP., | ) | |
| | ) | |
| | ) | CASE NO.  1:19CV2209 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| PINNACLE INDUSTRIAL SERVICES, | ) | |
| | ) | **ORDER** |
| Defendant. | ) | Resolving ECF Nos. 55, 56 |
| | ) | |

Pending before the Court are Plaintiff's motions for Summary  Judgment (ECF Nos. 55, 56), to which Defendant has responded (ECF No. 64) and Plaintiff has replied (ECF No. 65). The parties, at the Court's invitation, provided supplemental briefing on the question of personal jurisdiction in advance of an evidentiary hearing on that topic conducted *via* Zoom.gov on April 7, 2021.  ECF Nos. 69, 70.[1]

---

[1] Defendant appended an e-mail/calendar appointment, which concededly was not produced before the close of discovery, to its supplemental briefing.  ECF No. 70-1.  The e-mail, dated January 9, 2018, states: "Order confirmation to be sent to us in the next day..[sic]  Pinnacle has confirmed all options etc so the order confirmation should be clear. Pinancle [sic] will review and confirm accuracy *verbally or by email but will not sign as this will bind us to Demag T&C's which we did not agree to at time of order placement*[.]" ECF No. 70-1 (emphasis added).  At the evidentiary hearing, Plaintiff's counsel voiced concern regarding the authenticity of the document, specifically the above-italicized text, which does not appear in any version of the document produced by either side in discovery. *See* ECF Nos. 70-2, 72-17, 72-18, 72-19, 72-20.  While Defense counsel maintained that he believes the document is authentic, he acknowledged that the document was unlikely to be dispositive as to any issue before the Court and was untimely produced.  Defense counsel withdrew the exhibit and disclaimed any reliance on it.

(1:19CV2209)

At that hearing, the Court heard argument from counsel; accepted exhibits;[2] and heard testimony from Martin Marincic, the Director of Product Support for Demag Cranes, and Joseph Wollner, the President and CEO of Pinnacle.  Being fully informed, the Court concludes that there is personal jurisdiction over Defendant in the state of Ohio as to all contracts except the spare parts contract, and grants Plaintiff's motions for summary judgment, in part.

## I. Background

The parties have maintained a commercial relationship related to the manufacture and sale of industrial cranes for more than 20 years.  ECF No. 55-1 at PageID #: 770.[3]  During that time, the parties have conducted commercial transactions involving millions of dollars.  Plaintiff, a crane manufacturer, is a Michigan corporation with its principal place of business in Ohio.  ECF No. 1 at PageID #: 1-2.[4]  Defendant, a general contractor and sales representative, is a Canadian corporation with its principal place of business in Canada.  _Id._  At the evidentiary hearing, Wollner testified that Defendant manufactures crane-related equipment and provides installation and commissioning services as a part of its "turnkey" business.

Plaintiff seeks recovery from Defendant for failure to pay for a steel slab and billet handling crane and various contracts for parts that Defendant purchased from Plaintiff in 19 separate orders.  _See_ ECF No. 1 at PageID #: 2-10.  Some, but not all, of the 19 orders were for parts for the steel slab and billet handling crane.

---

[2] Defendant's exhibits appear at ECF No. 71, Plaintiff's at ECF No. 72.
[3] Unless otherwise indicated, the facts are undisputed.  The parties are largely in agreement on the relevant events.  They are in dispute, however, over the legal implications of various actions and correspondence.
[4] Plaintiff was formerly known as Terex MHPS Corp.  ECF No. 1 at PageID :# 1. Terex, and the "TEREX MHPS CORP COMMERCIAL TERMS AND CONDITIONS" are referenced in various relevant documents.  There is no dispute that Plaintiff and Terex are the same actor/party for the purposes of this litigation.

2

(1:19CV2209)

The parties have stipulated:

1.  The agreed-upon purchase price for the Crane was $1,061,713.00.

2.  The parties agree that the amount in dispute as to the purchase price of the Crane is $518,161.67, which Pinnacle has not paid to Demag.

3.  Pinnacle's customer EVRAZ North America paid Pinnacle in full for Pinnacle's invoices related to the Crane.

4.  Pinnacle did not submit a warranty claim to Demag with respect to the items contained in the Invoice [appearing at ECF No. 53-1].

5.  The parties agree that the amount in dispute as to the purchase price of certain parts provided by Demag, both related and unrelated to the Crane, is $326,407.23, which Pinnacle has not paid to Demag.

ECF No. 53 at PageID #: 645.[5]

The purchase price for the crane was negotiated over multiple months in 2017 and finalized in October 2017.  ECF No. 72-1.  Change orders were entered between December 2017 and May 2018.  ECF No. 1-4.  Wollner confirmed at the hearing that the crane was delivered to Defendant around the end of September or beginning of October 2018.

The orders for parts can be separated into 4 categories.  While the parties have not expressly explained the origin of the stipulated figures, it appears that the figures are based on the pricing documented in the invoices appended to the Complaint.[6]  As explained above, the parties have stipulated that, collectively, $326,407.23, remains outstanding on the contracts for parts.  That figure is equal to the total of the following outstanding balances:

---

[5] The prices referenced in this ruling are in Canadian Dollars, which is the unit of currency used by the parties in the relevant contracts and in their briefing.  The Court will address the implications of the use of a foreign currency at the end of this ruling.

[6] There is no dispute that the documents appended to the Complaint are true and accurate copies of documents exchanged by the parties during the course of the relevant transactions.  However, in some cases, prices differ from the prices stated in some earlier-issued purchase confirmations put before the Court for other purposes.

3

(1:19CV2209)

1. 16 orders placed through Plaintiff's website ($15,270.27),[7] ECF Nos. 1-7 at PageID #: 47-54, 67-68, 74-81, 90-91, 94-95, 100-109, 72-8;

2. An order for spare parts placed by e-mail ($283,293.84),[8] ECF Nos. 1-7 at PageID #: 45-46, 55-64, 69-70, 82-89, 92-93, 96-99, 110-111, 72-13;

3. An order for a hoist and trolley placed by e-mail ($24,713.12),[9] ECF Nos. 1-7 at PageID #: 71-73, 72-9; and

4. An order for end trucks placed by e-mail ($3,130.00), ECF Nos. 1-7 at PageID #: 65-66, 72-15.

There are two principle disputes between the parties.  First, whether each of the contracts included Plaintiff's standard terms and conditions, which include, *inter alia*, a forum selection clause[10] and a choice of law clause[11] both pointing to Ohio, and an exclusive remedy in the form of a warranty provision.[12]  The second dispute targets the merits – whether the crane was defective and required Defendant to incur significant damages to meet the needs of its customer.

---

[7] Defendant asserts that the 16 online orders total "approximately $13,400[.]"  ECF No. 64 at PageID #: 1583.  It is not apparent how Defendant calculated that figure.

[8] The purchase confirmations for the spare parts represent a 20% discount of the list price, whereas later-issued invoices reflect a 30% discount.  *Compare* ECF No. 1-7 at PageID #: 45-46, 55-64, 69-70, 82-89, 92-93, 96-99, 110-111 *with* ECF No. 72-13.  This price discrepancy is not relevant to the Court's analysis given the evidence and argument presented, and the parties' stipulations.

[9] Defendant has already paid $47,972.52 toward the hoist and trolley, leaving $24,713.12 outstanding.  ECF No. 1-7 at PageID #: 72.

[10] "**22. Jurisdiction**. The parties agree that the proper and exclusive forum and venue in all legal actions brought to enforce or construe any of the provisions of this sales order agreement shall be in the United States District Court, Northern District of Ohio or, if federal jurisdiction is lacking in such legal action, in the state courts in Cleveland, Ohio."  ECF Nos. 72-2 at PageID #: 1771; 72-7 at PageID #: 1784.

[11] "**21. Construction and Severability**. This agreement constitutes the entire agreement between the parties regarding the subject matter hereto and shall be construed and enforced in accordance with the laws of the State of Ohio."  ECF Nos. 72-2 at PageID #: 1771; 72-7 at PageID #: 1784.

[12] "**8. Remedies for Breach**. IN THE EVENT OF ANY BREACH OF THE WARRANTY BY SELLER, THE PARTIES AGREE THAT SELLER'S LIABILITY SHALL BE LIMITED EXCLUSIVELY TO THE REMEDIES OF REPAIR OR REPLACEMENT (AT SELLER'S SOLE DISCRETION) OF ANY DEFECTIVE PRODUCT OR THE REPERFORMANCE OF ANY DEFECTIVE SERVICES

4

(1:19CV2209)

At the outset of this litigation, alleging a lack of minimum contacts with the state of Ohio, Defendant sought dismissal for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). ECF No. 13.  Plaintiff, in opposition, asserted that the parties agreed to a forum selection clause identifying the Northern District of Ohio as the exclusive jurisdiction for resolution of the parties' disputes.  ECF No. 21 at PageID #: 266.  The Court concluded that the Complaint stated a *prima facie* case of personal jurisdiction as to all claims based on the forum selection clause and denied Defendant's motion to dismiss.  ECF No. 33.  The Court noted Defendant would have the opportunity to put Plaintiff to its proof on the question of personal jurisdiction later in the proceedings.  ECF No. 38 at PageID #: 592-93.

As discussed in greater detail below, Plaintiff has moved for summary judgment on all claims.  The Court will first address Defendant's primary defense – that the Court lacks personal jurisdiction over it.

## II. Personal Jurisdiction

Defendant urges the Court to deny summary judgment and allow the case to proceed to trial based on a dispute of material fact as to personal jurisdiction, specifically, whether it accepted the terms and conditions in which the forum selection clause appears.  Defendant argues that it rejected Plaintiff's terms and conditions as to the crane contract in two ways: (1) by removing the terms and conditions from the PDF file it returned to Plaintiff when it ordered the crane; and (2) by expressly orally rejecting the terms and conditions, including specifically the forum selection clause.  ECF No. 64 at PageID #: 1585-86 (citing Wollner Deposition Testimony

---

COVERED BY THE WARRANTY."  ECF Nos. 72-2 at PageID #: 1769; 72-7 at PageID #: 1784.  A warranty claim under the contract must be made by written notice within 30 days of discovery of the defect.  ECF Nos. 72-2 at PageID #: 1768; 72-7 at PageID #: 1784.

(1:19CV2209)

concerning removal of terms and express oral rejection).  Defendant also advances various

arguments that the terms and conditions do not apply to some of the contracts for parts.

 The Court, in its discretion, conducted an evidentiary hearing on the question of personal

jurisdiction during the Final Pretrial Conference.  ECF No. 67; Minutes of Proceedings dated

4/7/2021.  The hearing took place well after the close of discovery, and after both parties had an

opportunity to evaluate the evidence and seek or oppose summary judgment.  The Court will

discuss the evidence presented at the hearing as relevant to each of the categories of contracts at

issue: Crane, Online, Spare Parts, Hoist and Trolley, and End Truck.

### A. Standard of Review

 "The party seeking to assert personal jurisdiction bears the burden of demonstrating that

such jurisdiction exists."  *Bird v. Parsons*, 289 F.3d 865, 871 (6th 2002).  In *Serras v. First*

*Tennessee Bank National Association*, the Sixth Circuit explained that "[t]he weight of [the]

burden ... depends on whether the trial court chooses to rule on written submissions or to hear

evidence on the personal-jurisdiction issue...." 875 F.2d 1212, 1214 (6th Cir.1989).  When a

district court "rules on written submissions alone[,]" as the Court did at the motion to dismiss

stage, the burden consists of "a *prima facie* showing that personal jurisdiction exists."  *Id*.

However, that burden is raised when a pretrial evidentiary hearing is conducted – the Court

evaluates Plaintiff's proof using the preponderance-of-the-evidence standard.  *Id.*  In considering

whether Plaintiff has carried its burden, the Court recognizes that it should act with "[g]reat care

and reserve … when extending our notions of personal jurisdiction into the international field[.]"

*Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 508-09 (6th Cir. 2014).

6

(1:19CV2209)

## B. Forum Selection Clauses

A forum selection clause is one way in which parties may validly consent to the jurisdiction of a particular court, and thereby waive any otherwise applicable defense to personal jurisdiction.  *See Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006) (finding the requirement that a court have personal jurisdiction over a party is a waivable right, and that litigants may consent in advance to the personal jurisdiction of a given court system through the use of a forum selection clause); *see also Kennecorp Mortg. Brokers, Inc. v. Country Club Convalescent Hosp., Inc.*, 610 N.E.2d 987, 988 (Ohio 1993) (finding a valid forum selection clause is sufficient in and of itself to establish personal jurisdiction).  A federal court sitting in diversity applies the substantive law of the forum state in determining whether a forum-selection clause provides the proper basis for personal jurisdiction over a defendant.  *Preferred Capital, Inc. v. Sarasota Kennel Club, Inc.*, 489 F.3d 303, 306 (6th Cir. 2007); *see also Wong v. PartyGaming, Ltd.*, 589 F.3d 821, n.6 (6th Cir. 2009).

Under Ohio law, a forum selection clause in a commercial contract controls, absent a strong showing that it ought to be set aside.  *See Preferred Capital, Inc. v. Assocs.*, 453 F.3d at 721. ("Commercial forum selection clauses between for-profit business entities are prima facie valid . . . so long as the clause has been freely bargained for.")  In determining the validity of a forum selection clause, the following factors should be considered: "(1) the commercial nature of the contract; (2) the absence of fraud or overreaching; and (3) whether enforcement of the forum selection clause would otherwise be unreasonable or unjust."  *Id.*  A forum selection clause should be read according to its terms, and the agreement in which it is located.  Unlike arbitration agreements, forum selection clauses should not be read to govern disputes beyond their express terms.  *Traton News*, 528 F. App'x at 528.

7

(1:19CV2209)

Personal jurisdiction is claim-specific. *J.M. Smucker Co. v. Promotion in Motion, Inc.,* 420 F. Supp. 3d 646, 655-56 (N.D. Ohio 2019) (collecting authorities).  Furthermore, when a forum selection clause is invoked as the basis for jurisdiction, it should be construed in accordance with its plain terms.  *Traton News, LLC v. Traton Corp.*, 528 F. App'x 525, 528 (6th Cir. 2013).  Here, the terms and conditions expressly apply only to "this agreement" or "this sales order agreement[.]"  ECF Nos. 72-2; 72-7.  Accordingly, the Court analyzes personal jurisdiction on a contract-by-contract basis.

### C. The Crane

Defendant advances two arguments concerning its rejection of Plaintiff's terms and conditions as to the contract for the crane.  First, it asserts that it physically removed the terms and conditions from Plaintiff's quote when it placed orders *via* e-mail, including when it ordered the crane.  *Compare* ECF No. 72-1 at PageID #: 1761-63 *with* ECF No. 71-1.

Second, it asserts that it verbally, and expressly, objected to inclusion of the terms and conditions, including specific rejections of use of the forum selection clause.  Considering Wollner's deposition testimony, submitted by Defendant in support of its opposition to Plaintiff's motions for summary judgment, and Wollner's testimony the evidentiary hearing, the record before the Court reflects that, at most, these verbal objections were raised in January, June, and September, 2018.  It is undisputed that Defendant did not propose express alternate terms, it only argues that it removed Plaintiff's, apparently hoping to leave the parties in a contractual posture.

Plaintiff, relying primarily on O.R.C. § 1302.10, argues that any such removal is ineffective, because the terms and conditions themselves limit acceptance of the quotes/offers to those terms.  Defendant argues that O.R.C. § 1302.10, commonly referred to as a "Battle of the

(1:19CV2209)

Forms" statute, does not apply because Defendant did not physically write out its own terms, it only deleted Plaintiff's.  While that might be true had Defendant's Purchase Order constituted the offer, it makes little sense in the context of this case, and Defendant has cited no authority counseling otherwise.  Terms applied by legal default or presumption, in the absence of other specific terms, are still terms – and those are what Defendant proports to have proposed.  Section 1302.10 also expressly contemplates that a party may offer "different" terms, not just "additional" terms.  Defendant cannot dispute, as a practical matter, that it argues here that "different" terms, *i.e.*, terms other than Plaintiff's standard terms, apply based on its assertedly deliberate deletion of the reference to Plaintiff's terms and conditions from the purchase order it e-mailed on October 27, 2017.

Undeterred, Defendant argues that because the deletion evinces a lack of assent, that there has been no meeting of the minds between the parties.  Defendant asserts that it, therefore, follows that this is a case evaluated under subsection C of § 1302.10, not subsections A and/or B as has been argued by Plaintiff.

Defendant acknowledges that its October 27, 2017, email (ECF No. 72-3) was an acceptance of Plaintiff's August 7, 2017, offer (ECF No. 72-1 at PageID #: 1761-63).  That e-mail "operates as an acceptance even though it states terms additional or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms."  § 1302.10(A).  There is no argument, or basis to argue, that Defendant made its acceptance of the quote *conditional* on assent to some terms other than those set forth by Plaintiff.  Indeed, the evidence shows the opposite – that Defendant received the October 31, 2017 "As Ordered" quote, ECF No. 72-4, which expressly incorporated the terms and conditions, and used that document to give Plaintiff further instructions regarding how to

(1:19CV2209)

proceed with the order, ECF No. 72-5. There is no suggestion, or evidence to support, that

Defendant expected or desired Plaintiff not to proceed with the order due to its purported

objection to the terms and conditions.

> Turning to the language of subsection B of § 1302.10:
>
> The additional terms are to be construed as proposals for addition to the contract. Between merchants, the terms become part of the contract unless one of the following applies:
>
> (1) The offer expressly limits acceptance to the terms of the offer.
> (2) They materially alter it.
> (3) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

§ 1302.10(B).

All three exceptions compel rejection of Defendant's argument against the application of

the terms and conditions: (1) Plaintiff, through incorporation of the terms and conditions into its

offer, expressly limited acceptance of its offer to the terms of the offer; (2) as Defendant itself

argues, many of the terms it purports to have changed are material; and (3) Plaintiff gave notice,

both with its offer and with its subsequent "As Ordered" confirmation, of its objection to the

application of any terms other than those expressly stated in its terms and conditions.

That Defendant does not argue for the application of subsection C in its response to the

motion for summary judgment, only at the evidentiary hearing is significant. Additionally,

subsection C is not the broad statement about meeting of the minds that Defendant asserts.

Subsection C applies when the parties conduct reflect the existence of a contract "although the

writings of the parties *do not otherwise establish a contract*." § 1302.10(C) (emphasis added).

That is not this case. There is no dispute that Plaintiff made a written offer, which Defendant

(1:19CV2209)

accepted by operation of § 1302.10(A), thereby forming a contract. The terms of that contract are governed by operation of § 1302.10(B).[13]

Even if Defendant were correct that the framework the Court should use is meeting of the minds, the argument would fail. First, a meeting of the minds argument, particularly when evaluating contracts between merchants, is a defense to *formation* – not to the circumstances of non-essential terms. "An enforceable contract must be specific *as to its essential terms, such as the identity of the parties to be bound, the subject matter of the contract, consideration, a quantity term, and a price term.*" *Franco Marine 1, LLC v. Great Lakes Towing Co.*, No. 1:17CV2506, 2018 WL 2985185, at *5 (N.D. Ohio June 14, 2018) (quoting *GEM Indus. v. Sun Trust Bank*, 700 F.Supp.2d 915, 921 (N.D.Ohio 2010)) (cleaned up, emphasis added).[14] There is no dispute here over essential terms, which are "usually contained in the offer[,]" of the agreement, such as price or quantity. *N. Side Bank & Tr. Co. v. Trinity Aviation, LLC*, 153 N.E.3d 889, 895 (Ohio Ct. App. 1st Dist. 2020).

---

[13] Even if Defendant were correct that the offer and acceptance do not constitute contract for the crane based on a meeting of the minds, in cases in which there is no written contract: "between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of" the statute of frauds "unless written notice of objection to its contents is given within ten days after it is received." § 1302.04(B). Therefore, if there were no meeting of the minds, the operative document under § 1302.10(C), which incorporates, *inter alia*, § 1302.04, becomes Plaintiff's "As Ordered" quote, ECF No. 72-4, which includes the terms and conditions.

[14] "Mutual assent or a meeting of the minds means that both parties have reached agreement *on the contract's essential terms*." *Artisan Mech., Inc. v. Beiser*, 2010-Ohio-5427, ¶ 27 (Ohio Ct. App. 12th Dist. 2010) (citing *Fenix Enterprises, Inc. v. M & M Mortg. Corp., Inc.*, 624 F.Supp.2d 834, 841 (S.D.Ohio 2009)) (cleaned up, emphasis added). "A requirement to enforcing a contract is a meeting of the minds as to the *essential terms of the contract*." *Schlaegel v. Howell*, 42 N.E.3d 771, 777–78 (Ohio Ct. App. 2nd Dist. 2015) (quoting *Minster Farmers Coop. Exchange Co. v. Meyer,* 884 N.E.2d 1056, 1061 (Ohio 2008) and *Kostelnik v. Helper,* 770 N.E.2d 58, 61 (Ohio 2002) (cleaned up, emphasis added).

11

(1:19CV2209)

Second, "[t]he term 'meeting of the minds,' [] tends to generate a great deal of confusion. … [O]ne person's unexpressed reservation does not prevent there being a meeting of the minds as that term is recognized in law." *Rudd v. Online Res., Inc.*, No. 17500, 1999 WL 397351, at *5 (Ohio Ct. App. June 18, 1999). "Ohio law requires only an objective meeting of the minds." *Pacifica Loan Five, LLC v. Fifth Third Bank*, No. 1:09CV930, 2011 WL 13228111, at *6 (S.D. Ohio Apr. 14, 2011) (quoting *Kreller Group, Inc. v. WFS Fin., Inc.*, 798 N.E.2d 1179, 1186 (Ohio Ct. App., 1st Dist. 2003)).

Defendant's entire argument hinges on its subjective intent in deleting the terms at the end of the quote – language which immediately followed a list of technical requirements which Defendant was expected to, and did, make substantial changes to. "Ohio law does not require contracting parties to share a subjective meeting of the minds to establish a valid contract." Rather, Ohio requires "that the terms of the agreement establish an objective meeting of the minds, which is to say that the contract was clear and unambiguous." *Id*. (quoting *216 Jamaica Ave. LLC v. S & R Playhouse Realty Co.*, 540 F.3d 433, 440 (6th Cir. 2008)). Absent any affirmative statement, or alternate express proposed terms, the reasonable business partner would not ascribe the weight to the deletion that Defendant urges. Rather, Defendant's placement of its order was an objective manifestation of assent to the original quote.[15]

---

[15] *Rayco Mfg. v. Deutz Corp.*, No. 5:08 CV 74, 2008 WL 2433823, at *3 (N.D. Ohio June 12, 2008) ("Rayco reasonably construed Deutz's acceptances as demonstrating its understanding that it must comply with Rayco's terms. In addition, Rayco made no attempt to conceal its terms, and, perhaps more importantly, there is no evidence to suggest that Deutz requested and was denied a copy of those terms. Had Deutz exercised reasonably prudent care in the contract formation process and simply asked Rayco to provide a copy of its Terms and Conditions before accepting them, it would have had an opportunity to object to those terms and perhaps negotiate a more favorable arrangement.") (footnote omitted).

(1:19CV2209)

Removal of the terms from the quote, alone, is insufficient to reject them, particularly

given that the terms and conditions themselves expressly reject the notion that Plaintiff would

accept an order without those terms.[16] *Hydrodec of N. Am. LLC v. API Heat Transfer, Inc.*, No.

5:16CV2207, 2017 WL 3283997, at *7 (N.D. Ohio Aug. 2, 2017); *Tennessee Rand, Inc. v.*

*Gestamp Washtenaw, LLC*, No. 1:20CV2433, 2021 WL 424299 (N.D. Ohio Feb. 8, 2021).

At the evidentiary hearing, Defendant argued it had no choice but to delete the terms.

This argument is perplexing at best.  Defendant could have, at any time during the many months

the parties spent negotiating over crane specifications, used affirmative statements to explain that

it was unwilling to accept Plaintiff's terms, and negotiated for different ones.  Defendant did not,

---

[16] **1. Terms and Conditions**. These Terms and Conditions of Sale cancel and supersede any and all terms of sale pertaining to Parts, Equipment and Services (and any supplements thereto) previously issued by Seller to Buyer and are subject to change without advance notice. The prices, charges, discounts, terms of sale and other provisions referred to or contained herein shall apply to Parts and Equipment (collectively referred to as "Products") sold and shipped to Buyer and Services provided by Seller on and after April 15, 2016, and shall remain in effect unless and until superseded in writing by Seller. Acceptance of an order for Products or Services by Seller shall be deemed to constitute a binding agreement between the parties pursuant to the terms and conditions contained herein and Buyer agrees that the order may not thereafter be cancelled, countermanded or otherwise changed without the prior written consent of Seller. This agreement supersedes any prior agreements, representations, or other communications between the parties relating to the subject matter set forth herein. No other terms and conditions shall apply including the terms of any purchase order submitted to Seller by Buyer, whether or not such terms are inconsistent or conflict with or are in addition to the terms and conditions set forth herein. Seller's acceptance of Buyer's purchase order is conditional upon Buyer's acceptance of all the terms and conditions contained in this agreement. Any communication construed as an offer by Seller and acceptance thereof is expressly limited to the terms and conditions set forth herein. The Products are intended for industrial/commercial use by professional contractors, professional end-users and their trained employees and are not intended for use by consumers.

ECF No. 72-2 at PageID #: 1767.

(1:19CV2209)

and bears the risk of its silence. *C.f. Energy Mktg. Servs., Inc. v. Homer Laughlin China Co., 186 F.R.D. 369, 375 (S.D. Ohio 1999)*, *aff'd*, 229 F.3d 1151 (6th Cir. 2000) ("It is undisputed that the parties dickered over the" relevant contractual provision.). Defendant could have made an express counteroffer to Plaintiff, conditioning formation on Plaintiff's acceptance of something other than its own terms and conditions. [17] Defendant did not, and thus its order is an acceptance of Plaintiff's terms and conditions under Ohio law. *Rayco Mfg.*, 2008 WL 2433823, at *3 ("[I]n order for Deutz's Order Confirmations to serve as rejections and counteroffers, there would need to be a condition imposed on Rayco to expressly accept Deutz's additional terms.").

Defendant claims it made express oral rejections of the terms and conditions only after the contract had been entered: in January, June, and September 2018. Even if the Court were to credit that such conversations took place, that was too little, too late. The contract for the crane had long been formed by the earliest of those express oral rejections.

During the evidentiary hearing, in a final effort to avoid application of the terms and conditions, Wollner asserted a distinction between *his* knowledge of the terms and conditions and the knowledge of Defendant's other employees, who may have been involved in executing various orders, including the crane order. This belatedly proffered distinction makes no difference because Wollner testified as Defendant's 30(b)(6) deponent. [18] ECF No. 60-2 at

---

[17] The Sixth Circuit has observed that "it is not enough that an acceptance is expressly conditional on additional or different terms; rather, an acceptance must be *expressly* conditional on the offeror's assent to those terms." *Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161, 1168 (6th Cir. 1972) (emphasis in original). An acceptance "subject to all of the terms and conditions on the face and reverse side hereof, including arbitration, all of which are accepted by buyer" is insufficient to modify (or reject) original terms under these circumstances. *Id.* at 1167.

[18] Furthermore, as discussed *supra* at n.15, Plaintiff was permitted to rely on objective manifestations of assent because it did not deny its commercial business partner

(1:19CV2209)

PageID #: 1258.  In the course of the 30(b)(6) deposition, Wollner, as Defendant, admitted knowledge of the terms and conditions,[19] and no specific evidence has been presented to the Court that any individual who had the authority to place orders specifically lacked knowledge of the terms and conditions.

"[A] Rule 30(b)(6) witness 'does not give his personal opinions, but presents the corporation's "position" on the topic'"  *Lloyd v. Midland Funding*, LLC, 639 F. App'x 301, 305 (6th Cir. 2016) (quoting *Brazos River Auth. v. GE Ionics, Inc.,* 469 F.3d 416, 433 (5th Cir.2006)).  Furthermore, any argument that relevant personnel were unaware of the terms and conditions, and their impact, is undermined by the argument Defendant makes now: that removal and/or rejection of the terms and conditions was a conscious decision, because Defendant did not wish to be bound by specific provisions.  *Defendant*, as a corporation, is properly charged with actual knowledge of Plaintiff's terms and conditions.[20]

---

access to the terms and conditions.  As discussed *inter alia*, *infra* at I(D), Plaintiff drew attention to its requirement that the terms and condition be a part of the contracts it entered.

[19] Defendant testified at its deposition as follows:

> Q. All right. So you were familiar with Demag's terms and conditions?
> A. Yeah.
> Q. And how was it that you became familiar with these terms and conditions?
> A. By reading them.

ECF No. 60-1 at PageID #: 1197.  Defendant's assertion that it is not a law firm, and thus may have had a lesser understanding of what it read is immaterial and disingenuous, given its position in the industry.  That Defendant had the terms is enough.  Furthermore, Defendant points to no language that was unclear or overly technical such that a sophisticated business entity should not have been expected to understand it, and it was Defendant's choice to enter into a million dollar contract, negotiated over the course of many months, without consulting counsel.

[20] The analysis contained in this paragraph and the immediately preceding paragraph apply with equal force to all the contracts at issue in this case.

(1:19CV2209)

Accordingly, relying on the evidence before it, the Court concludes that Defendant had full knowledge of the terms and conditions at all relevant times.  Accordingly, the Court concludes that the terms and conditions apply to, and it has personal jurisdiction over Defendant for, the order of the crane.

### D. Online Orders

Defendant placed 16 of the orders at issue using Plaintiff's website.  ECF Nos. 1-7 at PageID #: 47-54, 67-68, 74-81, 90-91, 94-95, 100-109, 72-8.  To place an order on Plaintiff's website, a buyer must check a box confirming that they "acknowledge the terms and conditions of Demag Cranes & Components Corp[:]"

| Item | Qty. | U/M | Part no. | Description | Net weight / U | Price / USD | Total / USD | Net price per U/M / USD | Net total / USD | Net discount / % |
|------|------|-----|----------|-------------|----------------|-------------|-------------|-------------------------|-----------------|------------------|
| 1 | 1 | EA | 77330033 | Controller DSC, DC1 - DC25 | 0.42 kg | 232.17 | 232.17 | 185.74 | 185.74 | 20.00 |
|   |   |   |   | 1 EA at Warehouse Watertown |   |   |   |   |   | (2.00) |

| | |
|---|---|
| ☐ By sending this order you acknowledge the terms and conditions of Demag Cranes & Components Corp. | Subtotal:     USD185.74 |
| ☐ I confirm that bought products won't be resold or re-exported directly or indirectly | special shop disc.     (USD3.71) |
| • to North Korea, Syria, Iran or Crimea, | Total:     USD182.03 |

ECF No. 72-6 at PageID #: 1783 (highlighting added by Plaintiff).

The Court finds, based on the evidence presented at the hearing, that the above page is representative of the pages Defendant would have needed to navigate to place the online orders. Martin Marincic testified, and Defendant has not disputed, that a user cannot physically place an order if they do not click on the terms and conditions box.

Defendant argues that check box agreements are insufficient to bind it to the terms and conditions for these orders.  ECF No. 64 at PageID #: 1595-96.  Defendant relies on two Northern District of California cases interpreting California contract law that focus on the conspicuousness of hyperlinks on sign-up or log-in pages.  Id. (citing Colgate v. Juul Labs, Inc.,

(1:19CV2209)

402 F. Supp. 3d 728, 764-65 (N.D. Cal. 2019) and *Arena v. Intuit Inc.*, 444 F. Supp. 3d 1086, 1093 (N.D. Cal.)).  Neither of the cited cases involve check boxes, let alone a check box that is specific to application of the terms and conditions, which *must* be selected before the user can proceed.[21]

As Plaintiff has urged in briefing which it incorporated by reference into its argument at the evidentiary hearing, Ohio (and California) courts have found that check boxes, or clicking on buttons labeled "I agree" is sufficient to bind a user to terms and conditions, even when a user has not reviewed them.  *Carey v. Uber Techs., Inc.*, No. 1:16CV1058, 2017 WL 1133936, at *4 (N.D. Ohio Mar. 27, 2017); *Ranazzi v. Amazon.com, Inc.*, 46 N.E.3d 213, 217 (Ohio Ct. App. 2015).  Accordingly, the Court concludes that the terms and conditions apply to, and it has personal jurisdiction over Defendant for, the online orders.

### E. Spare Parts

On August 27, 2018, Defendant placed an order for parts.  ECF Nos. 1-7 at PageID #: 45-46, 55-64, 69-70, 82-89, 92-93, 96-99, 110-111, 72-13.  As described at the hearing and in the e-

---

[21] These cases appear in a paragraph that is substantively identical to one that appears in Defendant's Motion to Dismiss briefing.  *Compare* ECF No. 64 at PageID #: 1595-96 *with* ECF No. 32 at PageID #: 461-62 (filed Apr. 1, 2020).  To the extent that *Arena* was persuasive when Defendant raised it in its motion to dismiss briefing, it is not any longer – the Ninth Circuit reversed the district court, on this very issue, last August, before the motion for summary judgment briefing commenced.  *sub. nom.*, *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020).  *Colgate* is similarly unhelpful.  There was no argument in that case that the parties challenging the very formation of an arbitration agreement had actual knowledge of its terms, and the case turned on the subtleties of the text formatting drawing the users' attention to the agreement (or not) as part of an argument about implicit knowledge as a basis for assent to the terms contained therein.  Here, Defendant concedes actual knowledge of the terms and conditions, as discussed above.  Accordingly, no analysis concerning implicit knowledge is required.  Even if such an analysis were called for, Defendant's attention was appropriately drawn to the check box on Plaintiff's website because it could not proceed with the ordering process without checking a specific box agreeing to the terms and conditions.

(1:19CV2209)

mail thread surrounding the order, ECF No. 71-4 at PageID #: 1731-40, the order was complex,

and required the input of individuals working for Pinnacle in Germany.  The price of this

contract, as well as the outstanding balance, is $283,293.86.[22]

Defendant argues that the only quote/offer provided by Plaintiff as to the spare parts was

in the form of a detailed spreadsheet appended to the e-mail placing the order.  ECF No. 71-4 at

PageID #: 1742.  The spreadsheet was detailed concerning the mechanics and price of the parts,

but did not reference or incorporate Plaintiff's terms and conditions.  E-mails exchanged between

the parties set forth some terms, such as delivery schedule and requirements.

Marincic testified at the hearing that the order, which was placed based on the

spreadsheet, would have been preceded by a formal quote, similar to the other quotes at issue in

the crane and online orders, because it is Plaintiff's standard practice to issue quotes containing

its own terms and conditions every time it provides a quote to a customer.  Marincic expressly

acknowledged at the hearing that this order involved some non-standard practices, such as

production of the spreadsheet, but maintained that a formal quote incorporating the terms and

conditions would have been sent to Defendant prior to its placing of the spare parts order.  No

quote, specific to the spare parts order, has been put before the Court.

Plaintiff, as was its standard practice, did send an order confirmation a couple days after

the order was received, which asserts that the order was placed subject to the terms and

---

[22] The Court notes that there is a discrepancy of approximately $40,000 between
the spare parts order confirmations appearing at ECF No. 72-13 and the invoices for those
same parts appearing at ECF No. 1-7.  A 30% discount appears on the later-dated invoices,
and a 20% discount is reflected on the earlier-dated order confirmations.  However, it
appears to the Court that this price listed on the order confirmations was in error – the
paperwork Defendant supplied to Plaintiff when it placed the order reflects that the parties
had already negotiated an "additional 10% one-time discount" in addition to the standard
"20% dealer discount".  ECF No. 71-4 at PageID #: 1743; *see also id*. at PageID #: 1731.

(1:19CV2209)

conditions. ECF No. 72-13.  Invoices issued about three weeks thereafter also reference the

terms and conditions.  ECF No. 1-7.  Plaintiff acknowledges that the neither confirmation nor

invoices could incorporate terms and conditions that were not a part of the offer or acceptance.

Nevertheless, Plaintiff argues that those documents are reflective of the intent of the parties at the

time of formation.

Defendant argues that no quote containing the terms and conditions was ever sent, and

that Plaintiff has not proven otherwise, meaning that it has not met its burden to establish

personal jurisdiction as to this contract.  The Court agrees.  Particularly in light of Marincic's

statements that this was, in some ways, a non-standard order, the Court does not find, more likely

than not, that a formal quote was generated and sent to Defendant, but has been omitted from the

discovery process and evidence presented to the Court.  Furthermore, due to the form/automatic

nature of the purchase order and invoice, the Court does not find those documents indicative of

any quote that may have been generated regarding this specific contract.

Because the spare parts order did not incorporate the terms and conditions at the time of

formation, and Plaintiff has not advanced any other argument concerning the exercise of personal

jurisdiction over this purchase,[23] the Court concludes that it lacks personal jurisdiction over

Defendant as to enforcement of the spare parts contract.

---

[23] Defendant described the order as "[v]ery urgent as the customer requires all
spares before this crane is installed in October." ECF No. 71-4 at PageID #: 1735.  Plaintiff
does not argue, and the Court has not evaluated, whether this contract share a common
nucleus of operative fact with the crane contract, such that the Court might be able to
exercise pendent personal jurisdiction.  *See SunCoke Energy Inc. v. MAN Ferrostaal
Aktiengesellschaft,* 563 F.3d 211, 221 (6th Cir. 2009) (Rogers, J, dissenting) (collecting
and describing authorities concerning the application of pendent personal jurisdiction in
federal diversity breach of contract cases).  While Plaintiff advanced this argument in its
briefing at the Motion to Dismiss stage, ECF No. 21 at PageID #: 272, it appears to have
abandoned the argument in the most recent briefing, and did not argue for the application

19

(1:19CV2209)

## F. Hoist and Trolley

On March 9, 2018, Plaintiff generated a quote for a Hoist and Trolley.  ECF No. 72-9.

That quote stated: "We thank you for your inquiry and offer you the above items for purchase

under our general sales conditions."  Id. at PageID #: 1833.  The "TERMS & CONDITIONS OF

SALE" were attached to the quote, and included a space for the buyer to initial.  Id. at PageID #:

1834-35.  Wollner testified that Defendant accepted the quote/offer, but now argues that because

it never initialed the attachment, that it did not accept the terms and conditions.  The text of the

quote did not require Defendant to initial to accept the terms and conditions, which were

expressly incorporated into the quote itself.

The defense also argues that the terms and conditions do not apply because a change

order, issued after acceptance of the quote, contained the following language, and Defendant did

not provide a signature:

> **ALL TERMS AND CONDITIONS OF SALE INCLUDED WITH THIS
> SALES ORDER CONFIRMATION ARE A PART HEREOF AND BINDING
> UPON THE PARTIES HERETO. BUYER HAS READ AND AGREES TO
> ALL OF THE TERMS AND CONDITIONS OF SALE INCLUDED WITH
> THIS SALES ORDER CONFIRMATION. THIS SALES ORDER
> CONFIRMATION MUST BE SIGNED AND RETURNED TO SELLER IN
> ORDER FOR YOUR ORDER TO BE SCHEDULED FOR PRODUCTION**.

ECF No. 72-11 at PageID #: 1837-38 (emphasis in original).

First and foremost, when Defendant accepted the quote, it accepted the terms and

conditions, which were expressly incorporated therein, and attached thereto.  Unlike the order for

the crane, Defendant does not argue that it removed any reference to the terms and conditions

---

of pendant personal jurisdiction at the evidentiary hearing.  Plaintiff did orally incorporate
a portion of its Opposition to Motion to Dismiss, ECF No. 21, into its argument at the
evidentiary hearing, but only as it relates to acceptance of terms and conditions *via*
electronic check boxes for the online orders.

(1:19CV2209)

from the quote when it placed its order.[24]  By accepting the quote for the hoist and trolley, Defendant objectively manifested its assent to the terms and conditions through a "definite and seasonable expression of acceptance[.]"  § 1302.10(A).  Accordingly, the Court has personal jurisdiction over Defendant for the contract for the hoist and trolley.

The change order is irrelevant to whether the terms and conditions applied upon formation of the contract, because the contract was formed upon Defendant's acceptance of Plaintiff's quote.  Even if it were relevant, Defendant's argument concerning the signature line misreads the text.  The signature is required for the order to be put into production, not to trigger the terms and conditions.  The change order even confirms, outside of the text immediately preceding the signature line, that the order "is subject to our standard terms and conditions." ECF No.  72-11 at PageID #: 1836.

### G. End Truck Order

Defendant agrees that, as to the end truck order, "it did include a copy of a quote that attached Demag's general terms and conditions …. [b]ased on this information, Pinnacle does not dispute that it agreed to Demag's terms and conditions [] as to that transaction."  ECF No. 64 at PageID #: 1590-91 n. 7 (citing ECF No. 21-11 at PageID #: 398).  Accordingly, the Court has personal jurisdiction over Defendant for the contract for the end truck.

---

[24] Because there was no removal of the terms and conditions, any oral statements made by Wollner in January 2018, following formation of the crane contract but prior to placement of the spare parts order, rejecting the terms and conditions broadly or as to the crane contract specifically are irrelevant to the Court's analysis as to the parts order.

(1:19CV2209)

### III. Motions for Summary Judgment

Having concluded that the Court has personal jurisdiction over Defendant as to all

contracts except the spare parts contract, the Court turns to Plaintiff's motions for summary

judgment.  ECF Nos. 55, 56.  Plaintiff brings four causes of action:

1. Breach of Contract (Crane)
2. Breach of Contract (Parts)
3. Unjust Enrichment
4. Action on Account

ECF No. 1 at PageID #: 7-10.  Defendant has also brought a counterclaim for breach of contract

related to the crane.  ECF No. 40 at PageID #: 604-07.

As to the merits of the dispute over the crane, Defendant contends Plaintiff is not entitled

to payment for the crane because the crane was non-conforming.  Defendant has also asserted a

counterclaim for breach of contract on that basis.  Defendant contends that the crane was so

defective that Defendant was forced to incur just over a million dollars in out of pocket costs to

repair the crane and meet the needs of its client.  Defendant contends these costs offset not only

the balance due on the crane itself, but also the amount due under the various parts contracts.

Defendant has produced scant evidence of the crane's poor condition – the testimony of

its President and CEO, Joe Wollner, and a self-created invoice listing the expenses incurred.

ECF No. 64 at PageID #: 1584 (citing ECF Nos. 40, 60-2 at PageID #: 1471-78).  Defendant has

not produced an expert report concerning the crane's condition, nor any corroboration of these

expenses, which are not itemized.  It has produced no invoices from, or communications with,

third parties, including its client.  It has produced no contemporaneous internal communications

discussing the need for repairs.  It is undisputed that between the time the crane was delivered,

before mid-October 2018, and February 2019, Defendant said nothing to Plaintiff about the

allegedly non-conforming and defective crane despite the magnitude of the alleged defects.

22

(1:19CV2209)

That is not to say that Defendant and Plaintiff were out of touch during this period. Defendant continued to place other orders from Plaintiff.  ECF No. 55-1 at PageID #: 772. When Defendant failed to make scheduled payments for the crane, Plaintiff put it on a credit hold.  ECF No. 56-3 at PageID #: 943.  Defendant, raising only vague and unspecified concerns regarding the crane's condition, negotiated a payment plan to have the hold removed from its account.  *Id.*

On February 8, 2019, following multiple inquiries from Plaintiff concerning payment for the crane, Defendant asserted the existence of "back charges coming to you for the slab yard crane project" in the "$700-$800k range."  ECF No. 56-3 at PageID #: 946.  On March 9, 2019, Defendant sent Plaintiff an invoice, totaling $1,052,537.69, purportedly for the costs associated with repairing the crane.  ECF No. 56-3 at PageID #: 933.

The invoice is a 7-page list of repairs supposedly made, but with only a total cost, no breakdown of the figure.  ECF No. 53-1; *see also* ECF No. 56-3 at PageID #: 934-42.  Plaintiff requested documentation supporting the invoice, but Defendant did not respond and has since described the request as "absurd[.]"  ECF No. 56-3 at PageID #: 910-13, 932.  When deposed, Defendant's representative, Wollner, asserted:

> [I]f we were to break – if we were to break up each and every one of these individually as we went and had a separate work order for every one of them, Demag would have – Demag would have had an invoice for $2 million.  So we were trying to be courteous to Demag, so this was a favor done for Demag the way that it was done.

ECF No. 60-1 at PageID #: 19-20.  Defendant has not produced any evidence supporting the amount of the charges, neither the $1,052,537.69, nor the approximately $2 million figure, beyond the spreadsheet and Wollnar's testimony, to the Court.

Plaintiff has moved for summary judgment on all counts.  ECF Nos. 55, 56.

23

(1:19CV2209)

## A. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Johnson v. Karnes, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of an essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." Guarino v. Brookfield Twp. Trs., 980 F.2d 399, 403 (6th Cir. 1992).

## B. Unjust Enrichment and Action on Account

As Plaintiff acknowledges, its claim for unjust enrichment is a claim in the alternative and does not apply when the parties' relationship is governed by contract. ECF No. 65 at PageID #: 1658. Plaintiff's unjust enrichment claim fails because the Court concludes that the parties' disputes are governed by contract, regardless of whether this Court has jurisdiction to enforce the terms of each contract.[25] Similarly, Plaintiff seeks the same damages in both its

---

[25] "It is well-settled that a claim for unjust enrichment will not lie in the face of a valid and enforceable contract." MMI Textiles, Inc. v. Short Bank Indus., Inc., No. 1:16CV2752, 2017 WL 1969465, at *1 (N.D. Ohio May 10, 2017) (citing Ullmann v. May, 72 N.E.2d 63 (Ohio 1947)); see also Cincinnati Tyrolit, Inc. v. A.R. Soltis & Co., No. 1:06-CV-00665, 2009 WL 1759598, at *6 (S.D. Ohio June 17, 2009) (finding "[a]lthough of course it would be unjust to allow Defendant to retain the benefit conferred upon it by Plaintiff, there is no need to resort to a theory [of] quasi-contract when the evidence of the account here establishes the contractual relationship between the parties"). "Because a valid and enforceable contract governs the instant dispute, a claim for unjust enrichment does not lie[.]" JK Prod. & Servs., Inc v. JLW-TW Corp, No. 1:19-CV-1908, 2020 WL

24

(1:19CV2209)

claims for breach of contract and its action on account.  Plaintiff's action on account is merely a

collective breach of contract action.[26]  Because the Court is able to determine Plaintiff's

entitlement to relief as to each contract individually, the action on account fails as duplicative.

Accordingly, the Court proceeds in its analysis of Plaintiff's Counts I and II, and

Defendant's sole breach of contract count regarding the crane.

### C. The Crane Contract

Having concluded that it has personal jurisdiction over Defendant regarding the contract

for the crane, the Court concludes that Defendant breached the contract by failing to issue

$518,161.67 in payments due.  For the reasons described below, this amount is not subject to

reduction or elimination based on the alleged defects in the crane.

Defendant is not entitled to affirmative relief.  Under the terms and conditions applicable

to the crane contract, Defendant's exclusive remedy was to file a warranty claim.  It did not.

Defendant argues that the warranty language does not apply because it:

> states, in pertinent part, that: "[s]eller warrants its new Equipment manufactured
> and sold worldwide, to be free, under *normal use and service*, of any defects in
> material or workmanship …." [Doc. No. 21-10 at PAGEID#332 (emphasis added).]
> On its face, this quoted and emphasized language indicates that the warranty applies
> once the Crane *has been placed into service and/or is being "used" for its intended
> purpose*. Pinnacle, however, was forced to incur the substantial out-of-pocket costs
> at issue in this case *before* that occurred because of Plaintiff's inability and failure
> to supply an operative Crane *in the first instance*. Pinnacle submits that this
> "warranty" was not designed or intended to foreclose relief based on Plaintiff's pre-

---

5513870, at *4 (N.D. Ohio Sept. 14, 2020).

    [26] Under Ohio law, an action on account is "an unsettled claim or demand by one
party against another, based upon a transaction creating a debtor relation[ship] between the
parties." *Johncol, Inc. v. Cardinal Concession Servs.*, LLC, 101 N.E.3d 1014, 1019 (Ohio
Ct. App. 2017).  The cause of action exists only as to the balance that may be due to one
of the parties as a result of a series of transactions.  *Id.*  (citing *Benchmark Contrs., Inc. v.
Southgate Mgt., LLC*, Nos. 13AP-390, 13AP-394, 2014 WL 1347740 at *8 (Ohio Ct. App.
Mar. 27, 2014).  An action on account is "founded upon contract" and constitutes a breach
of contract claim.  *Id.*

(1:19CV2209)

> completion breaches, and Plaintiff's attempt to invoke it as a key basis for seeking summary judgment should be rejected.

ECF No. 64 at PageID #: 1598 (all emphases in original).

Defendant's strained interpretation ignores the extensive other language within the warranty provision, which discusses that the period for which the warranty extends is based on the "date of delivery" *or* once the product completes some predetermined "hours of operation, whichever occurs first." ECF No. 72-2 at PageID #: 1768.  The plain text of the warranty provision contemplates defects discoverable upon delivery, which are precisely the kinds of defects Defendant alleges.  The warranty provision applies to Defendant's assertion that the crane was defective, and that it incurred costs as a result of that defect.  Because it is undisputed that Defendant did not timely file such a claim, it is not entitled to damages.[27]

Accordingly, summary judgment will be entered against Defendant, and in favor of Plaintiff, on Plaintiff's Count I, and Defendant's counterclaim.[28]

### D. Parts Contracts

The Court has concluded that there is personal jurisdiction over Defendant as to the 16 orders placed through Plaintiff's website ($15,270.27), the order for the hoist and trolley

---

[27] Even if Defendant could pursue an affirmative claim for relief beyond the scope of the warranty provision, it does not appear to the Court that the claim made here was timely.  The applicable terms and conditions contain a one-year limitation on bringing a cause of action under the terms of the contract.  ECF No. 72-2 at PageID #: 1769.  It is undisputed that Defendant was aware of any alleged defect with the crane upon delivery, no later than mid-October 2018, and incurred all alleged damages prior to March 9, 2019, when it invoiced Plaintiff.  ECF No. 56-3 at PageID #: 933.  Defendant did not pursue its claim until July 2020.  ECF No. 40.  The first two answers, filed in January and February 2020, even if timely, did not include any counterclaim.  ECF No. 14; ECF No. 17.

[28] The Court need not reach Plaintiff's other arguments justifying its entitlement to summary judgment on Count I, including whether Defendant has sufficiently alleged a dispute of material fact that the crane was defective, or that Defendant incurred, or could prove, the costs/damages alleged in the March 9, 2018 invoice.

(1:19CV2209)

($24,713.12), and the order for end trucks ($3,130.00).  As to these contracts, it is undisputed that the outstanding balance is $43,113.39 for goods ordered and delivered.  Having concluded that this balance due is not offset by Defendant's breach of contract damages, The Court will enter judgment in favor of Plaintiff based on this amount as to Count II.

### E. Calculation of Judgment

The calculation of judgment is complicated by two issues.  First, Plaintiff contends it is entitled to contractual interest and attorney's fees and costs.  ECF No. 55-1 at PageID #: 783-84. Second, the contracts, while governed by the laws of the State of Ohio, call for payment in a foreign currency, specifically Canadian Dollars ("CAD").

Taking the second issue first, all figures referenced earlier in this ruling, as well as in the parties' papers and exhibits, are in CAD.  However, United States District Courts can only award judgment in US Dollars: Units of foreign currency "are not money but things only, the judgment must be in dollars and cannot be in [a unit of foreign currency] any more than it could be in wheat if the broken contract related to that commodity."  *Die Deutsche Bank Filiale Nurnberg v. Humphrey*, 272 U.S. 517, 521 (1926).

Here, not only do the contracts specify that they are payable in CAD, but payable to an address, specifically Plaintiff's bank, in Canada.  Accordingly, the Court converts the damages into US Dollars based on the exchange rate on the date judgment enters – "where a debt in foreign currency is payable in a foreign country, the judgment day rule applies. This assumes a uniform result whether the suit is brought in the foreign country or in the United States."  *Trinh v. Citibank, N.A.*, 623 F. Supp. 1526, 1537 (E.D. Mich. 1985), *aff'd,* 850 F.2d 1164 (6th Cir. 1988) (interpreting *Zimmermann v. Sutherland*, 274 U.S. 253, 254-56 (1927) and citing *Shaw,*

(1:19CV2209)

*Savill, Albion & Co. Ltd. v. The Fredericksburg,* 189 F.2d 952 (2d Cir.1951)).[29]  Absent

convincing argument from the parties, the Court intends to enter judgment for Plaintiff using the

exchange rate reflected on the Federal Reserve's website on the date judgment issues.[30]

Concerning the fees, costs, and interest, thus far the briefing on both sides on each has

been vague, conclusory, and, as to some categories, unsupported by appropriate documentation.

Given the Court's ruling on the motions for summary judgment, the parties should be

able to resolve much, if not all, of the appropriate amount of these figures collaboratively.

Accordingly, the parties shall, on or before April 30, 2021, make a single joint filing on the

docket concerning the appropriate judgment amount, specifically addressing fees, costs, interest,

and the method of conversion of damages to US Dollars.

If the parties disagree on any point, the joint filing should note the area and nature of

disagreement with specificity, and provide the position of each party.  The Court expects any

statements concerning disagreement to be directly responsive to the argument advanced by the

party's opponent, and reflect that counsel have thoroughly discussed each other's positions well

in advance of submitting their filing to the Court.  The joint filing may not exceed 15 pages,

excluding supporting documentation (*i.e.* itemizations of fees and/or costs) that shall be filed as

attachments.  While the Court will consider any appropriate motion put before it, the parties

should not expect gratuitous leave to seal their filing or attachments.

---

[29] In diversity cases such as this one, on-point state law to the contrary can compel a different analysis.  Ohio law does not appear to compel a different approach and, "[i]n the absence of pertinent state law precedent, federal courts in diversity suits have frequently[, appropriately,] adopted the federal approach." *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 323 (6th Cir. 2011) (quoting *Siematic Mobelwerke GmbH & Co. KG v. Siematic Corp.*, 669 F.Supp.2d 538, 542 (E.D.Pa.2009) (collecting authorities)).

[30] *See* Federal Reserve, Historical Rates for the Canadian Dollar, https://www.federalreserve.gov/releases/h10/hist/dat00_ca.htm.

(1:19CV2209)

## IV. Issues Concerning Sealing

Plaintiff filed both sealed and public versions of its motions for summary judgment. Compare ECF Nos. 55, 56 with 57, 58 (SEALED).  Local Rule 5.2 states: "No document will be accepted for filing under seal unless a statute, court rule, or prior court order authorizes the filing of sealed documents. If no statute, rule, or prior order authorizes filing under seal, the document will not be filed under seal. … If the sealing of the document purports to be authorized by court order, the electronically filed sealed document shall be linked to the order authorizing the sealing."

Plaintiff did not seek leave to file sealed and redacted versions of its motions.  Plaintiff was only physically able to file these documents under seal by marking this case's Stipulated Protective Order (ECF No. 30) as a "related document" during the filing process.  That Order did not authorize sealing of Plaintiff's motions.  To the contrary, the order states: "Absent a statute or an order of this Court, documents may not be filed under seal.  Neither this Stipulated Protective Order nor any other sealing order constitutes blanket authority to file entire documents under seal."  ECF No. 30 at PageID #: 443 (citations omitted).

The Order only authorizes the filing of a sealed and redacted version of a filing in the absence of a court-granted exception under "extraordinary circumstances[.]"  Id. at PageID #: 444.  Plaintiff has not presented any facts suggesting that such circumstances are present in this case.  Furthermore, the only information which appears to be redacted is the amount Defendant was paid by its customer for the crane: $2,271,223.22.  Not only is the nature of that figure insufficient to justify sealing or redaction at this stage of the ligation, it is publicly available.  ECF No. 60-1 at PageID #: 1194.  Accordingly, ECF Nos. 57 and 58 will be restored to the public docket.

29

(1:19CV2209)

## V. Conclusion

For the reasons stated herein, the Court concludes that there is personal jurisdiction over Defendant in the state of Ohio as to all contracts except for the spare parts contract, and, therefore, grants Plaintiff's motions for summary judgment (ECF Nos. 55, 56) in part.  The Court also restores ECF Nos. 57 and 58 to the public docket, and denies them as moot in light of the rulings on ECF Nos. 55, 56.  On or before April 30, 2021, the parties shall make the joint filing described in Section III(E) of this ruling.

As the Court has resolved all issues which would otherwise necessitate a need for trial, the virtual jury trial scheduled to commence at 9:00 a.m. on May 3, 2021, is canceled.


IT IS SO ORDERED.


April 19, 2021                                            */s/ Benita Y. Pearson*
Date                                                          Benita Y. Pearson
                                                                United States District Judge

30